JAMES, Carrie, a Minor, by Elizabeth JAMES, Next Friend,
Plaintiff–Appellant,

v.

T.G. SADLER, et al.,
Defendants–Appellees.

No. 89–4582.

United States Court of Appeals,
Fifth Circuit.

Aug. 28, 1990.

Stella Terrell, Yazoo City, Miss., for plaintiff-appellant.

Gary E. Friedman, Susan D. Fahey, Miller, Milam & Moeller, Jackson, Miss., for City of Yazoo City, Miss., et al.

Dennis L. Horn, Jackson, Miss., for Tom Sadler.

Before REAVLEY, DUHÉ, and WIENER, Circuit Judges.

DUHÉ, Circuit Judge:

Carrie James appeals the district court's dismissal of her claim for damages under 42 U.S.C. § 1983 arising out of an allegedly unconstitutional search and detention. We affirm in part and reverse and remand in part.

Facts and Proceedings Below

Appellant Carrie James was receiving a permanent wave treatment at Mr. T's beauty salon in Yazoo City, Mississippi. Suspecting the proprietor, David Thomas, of drug trafficking, agents of the Mississippi Bureau of Narcotics conducted a raid on the salon, arresting Thomas and searching the premises. Accompanying the narcotics agents on the raid were defendants T.G. Sadler, Sheriff of Yazoo County, and Wade Woods, Bobby Adam, and Mike Wallace, Yazoo City police officers.

Upon entering the salon, the defendants found James under a hair dryer with curlers in her hair. The permanent wave solution, a thioglycolate alkali, had been applied to James' hair 30 minutes before. James was subjected to a pat-down search and instructed to remain outside while the search of the salon proceeded. While outside, James asked one of the officers if she "could go back and get the rollers and stuff out of [her] hair." This request was denied. Neither James nor the officers knew that the wave solution was dangerous or required neutralization.

After a delay of approximately 40 minutes during which the search of the salon and the arrest of Thomas were completed, James was permitted to leave the premises. She returned home and rinsed her hair in clear water. Later, she began experiencing pain, swelling, and hair loss. She filed suit for damages under 42 U.S.C. § 1983 initially naming agents of the federal government as well as Mississippi and Yazoo County officials, the City and its police Chief as defendants.[1] In her amended complaint, she claimed that the officers' "negligent actions" prevented her from having the wave solution removed from her hair, resulting in damage to her hair and scalp and mental distress.

The Municipal defendants moved for partial dismissal on the ground that James failed to identify a municipal policy upon which to base liability. This motion was granted. James moved to amend the complaint, but the district court denied this motion due to James' failure to do so within the 10 day period provided by Rule 59(c)

---

**1.** At the time the complaint was filed, James was uncertain as to the identity of the parties involved in the raid. The complaint against the federal agents was eventually dismissed on May 10, 1988.

or 60(b). The district court did allow her to amend her complaint to add defendants Woods, Adam, and Wallace, the Yazoo City police officers, provided these defendants were properly served within 30 days. However, the court did not allow the amendment naming Mississippi Narcotics Bureau agents on the ground that the original complaint failed to place these parties on notice within the applicable one year limitations period applied by the court.

On June 28, 1988, the district court granted summary judgment in favor of all defendants. The court found that the defendants were merely back-up officers who did not participate in the search or detention of the plaintiff. Furthermore, the court found that the plaintiff had failed to state a negligence claim because the officers had no knowledge of the danger of the chemicals or the possibility of injury to the plaintiff. This appeal followed.

### The Motion to Amend

■ The appellant asserts that the district court erroneously denied her Motion to Amend her complaint to include allegations satisfying the pleading requirements of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).[2] While the district court did find that the amended complaint "minimally satisfied" the requirements of *Monell*, it refused to permit this amendment. This refusal constitutes an abuse of the district court's discretion.

Federal Rule of Civil Procedure 15(a) requires a district judge freely to permit amendments unless the ends of justice require denial. See also, *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir.1981). The district court based its denial on James' failure to contest the dismissal "judgment" within the 10 day period provided by Rules 59(c) or·60(b). We find the court misapplied this requirement.

The dismissal Order was interlocutory; some defendants remained parties to the action. Those cases relied upon by the

district court involve final judgments. See, e.g., *Collins v. City of Detroit*, 780 F.2d 583 (6th Cir.1986); *Cooper v. Shumway*, 780 F.2d 27 (10th Cir.1985); *Scott v. Schmidt*, 773 F.2d 160 (7th Cir.1985). The policy interests underlying Rules 59 and 60, securing the finality of judgments, were not implicated in this case because the action was still proceeding against other defendants in the district court.

■ The appellant also submits that the district court improperly denied her Motion for Leave to Amend her Complaint to include previously unknown Mississippi Narcotics agents. We agree. The district court denied the motion on the ground that the amendment was barred under a one-year statute of limitations. In so ruling, the district court did not have the benefit of two controlling cases decided thereafter. In *Owens v. Okure*, 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989), the Supreme Court held that in states with more than one statute of limitation for personal injury actions, § 1983 actions should be governed by the residual or general personal injury limitations period. Under *Owens*, the three year residual period provided by Section 15–1–49, Miss.Code Ann. applies. In *Thomas v. City of New Albany*, 901 F.2d 476 (5th Cir.1990), this court held that *Owens* should be retroactively applied. Thus, the district court erred in not allowing the plaintiff to amend her complaint to name the Mississippi narcotics officers.

### Summary Judgment

■ The appellant contends that the district court improperly granted summary judgment as to all defendants. Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." All facts contained in the pleadings, depositions, admissions, and answers to interrogatories are reviewed by "drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm*

---

**2.** In *Monell*, the court held that in order to recover against a municipality under 42 U.S.C. § 1983 the plaintiff must allege that "execution

of a government's policy or custom ... inflict[ed] the injury...." *Id.* 436 U.S. at 694, 98 S.Ct. at 2037–38.

*Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the record evidence before the court. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). See also, *Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc).

We apply the same standard of review as did the district court. *Waltman v. International Paper Co.*, 875 F.2d 468, 474 (5th Cir.1989); *Moore v. Mississippi Valley State University*, 871 F.2d 545, 548 (5th Cir.1989). We find that the district court improperly granted summary judgment as to all defendants.

■ The district court declined consideration of either the legality of the pat-down search or the defense of qualified immunity finding that the Yazoo City officers served merely as backup for the Mississippi narcotics agents and had no responsibility for the pat-down or search. The district court relied in part upon *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), a case which does not stand for this proposition. In *Rizzo,* the plaintiff requested injunctive relief and the appointment of a receiver to supervise and review police activity in light of alleged civil rights violations. The court denied such broad relief based upon its finding that discreet violations by a few officers did not justify court interference in the administration of local affairs. The *Rizzo* case did not address the liability of backup or standby officers for the acts of other agents, thus the district court's reliance on this case was improper. The other cases relied upon by the district court, *Claiborne v. Cahalen*, 636 F.Supp. 1271 (D.Md.1986) and *Ghandi v. Police De-*

*partment of City of Detroit,* 747 F.2d 338 (6th Cir.1985), cert. denied, 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 861 (1988) are not controlling in this circuit.

The appellant relies on a recent decision from our circuit handed down after the district court's ruling which does address the liability of backup officers. In *Melear v. Spears,* 862 F.2d 1177 (5th Cir.1989), a deputy sheriff of a neighboring county provided backup for another officer's illegal search of an apartment building. The backup officer stood armed at the door of the building while the search proceeded. The court concluded that this made the officer "a full, active participant in the search, not a mere bystander," and that "[b]oth men thus performed police functions that were *integral to the search." Id.* at 1186. See also, *Creamer v. Porter* 754 F.2d 1311 (5th Cir.1985) (where the court found that an officer who was "present until the search was completed and the seized items removed from the premises" was more than a bystander and therefore was improperly dismissed from the suit. *Id.* at 1316.)

The record reveals that although the Yazoo City officers did not physically perform the pat-down search of James,[3] they remained armed on the premises throughout the entire search. Additionally, the Yazoo City officers guarded the detained customers outside the shop while the search and arrest proceeded inside.[4] Under this court's holding in *Melear*, these activities were "integral to the search" and render them participants rather than bystanders. The district court improperly granted summary dismissal on this basis.

### Qualified Immunity

■ Although all defendants' participation in the search and detention would

---

**3.** James was patted-down by a female officer. All the Yazoo City officers were male, foreclosing the possibility that the search of James. was conducted by one of the Yazoo City defendants.

**4.** The affidavits filed by the plaintiff and those filed by the Yazoo City officers differ with regard to the role played by the officers in the search and detention. While those affidavits submitted on behalf of the plaintiff suggest that the Yazoo City officers entered the salon with their weapons drawn "just like on T.V.," the defendants' affidavits state that they did not "point a gun or any weapon at Carrie James." All parties concede that the defendants were at the scene to provide "surveillance and backup."

**838**

be sufficient to impose liability under § 1983, they may be immune. Redefined in *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982),[5] the qualified immunity doctrine attempts to balance society's interest in redressing private injury against the risks of interference with the police function. *Brown v. Glossip,* 878 F.2d 871 (5th Cir.1989); *Elliot v. Perez,* 751 F.2d 1472 (5th Cir.1985). Because the doctrine is designed to protect public officials from "the 'broad ranging discovery' that can be 'peculiarly disruptive of effective government,'" questions regarding qualified immunity are resolved on the face of the pleadings and with limited resort to pre-trial discovery. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987) (citations omitted.) See also *Geter v. Fortenberry,* 849 F.2d 1550, 1553–54 (5th Cir.1988).

Qualified immunity cloaks a police officer from liability if a reasonably competent law enforcement agent would not have known that his actions violated clearly established law. *Harlow v. Fitzgerald,* supra. A constitutional right must be implicated,[6] and "the contours of the right must be sufficiently clear that a reasonable official would understand that what he's doing violates that right." *Anderson v. Creighton,* supra 107 S.Ct. at 3039.

▮ The officers' refusal to allow James to re-enter the salon to remove "the rollers and stuff" from her hair does not represent the violation of a constitutional right that was "clearly established" at the time of the incident. *Id.* This action falls within the protection of the doctrine of qualified immunity and these defendants are not subject to suit on this basis.

▮ The pat-down search of James, however, does not fall within the protection of the immunity doctrine. In *Ybarra v. Illinois,* 444 U.S. 85, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979), the court noted that "mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person." *Id.* at 91, 100 S.Ct. at 342. A limited pat-down search of a person is only permissible upon a showing of "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). As the court in *Ybarra* noted, "[t]he narrow scope of the *Terry* exception does not permit a frisk ... on less than reasonable belief or suspicion directed at the person to be frisked, even though that person happens to be on premises where an authorized narcotics search is taking place." *Ybarra,* 444 U.S. at 94, 100 S.Ct. at 343.

The right to be free from an unreasonable pat-down search is a constitutional right sufficiently contoured to remove the defendant's actions from the protection of the immunity doctrine. Based upon the undisputed evidence, the defendants found James, an eighteen-year old female, asleep under the dryer when they entered the salon. This hardly presented the type of menacing threat which would give a reasonable officer grounds to conduct a pat-down search of James. The record is silent as to what specific facts the defendants possessed at the time of the entry. Upon remand, the evidence presented may establish "reasonable suspicion" sufficient to justify the pat-down and detention of James. Until then, however, this court must evaluate the availability of the immunity defense based upon this limited record

---

5. Prior to the court's decision in *Harlow,* it had applied a two-pronged subjective/objective test for immunity. See *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The objective element involved an official's regard for basic constitutional rights. The subjective element referred to "permissible intentions." The subjective inquiry was abandoned in *Harlow* because as a fact question it frequently exposed the municipal plaintiff to the risks and costs of litigation.

6. In *Gagne v. City of Galveston,* 805 F.2d 558 (5th Cir.1986), this court distinguished constitutional rights from those created by statute or administrative policy. "The perverse consequences of attaching constitutional liability to such efforts at self-regulation when no constitutional duty was otherwise clearly established are self-evident." *Id.* at 560, n. 2.

evidence. The district court improperly granted summary judgment as to all defendants.

■ The district court properly dismissed the negligence cause of action. Under Mississippi law, a defendant is liable if his negligence is "predicated upon an action or inaction prompted by knowledge, actual or implied, of facts which make the result of his conduct not only the probable result but also the result which he should, in view of the facts, have reason to anticipate." *Dumas v. Pike County, Mississippi,* 642 F.Supp. 131 (S.D.Miss.1986). James asked one of the officers if she could take the *"rollers and stuff* out of her hair." She did not inform the officer that a hazardous chemical solution had been put in her hair (she apparently was herself unaware of any hazard) nor could the defendants have reasonably anticipated damage to the plaintiff's hair and scalp.

For the foregoing reasons, the judgment of the district court is AFFIRMED in part and REVERSED in part and REMANDED for further proceedings in accordance with this opinion.